August 3, 2022
Page 1

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square, Room 1105
New York, NY  10007

      Re:    <u>City of Philadelphia, et al.</u> v. <u>Bank of America, et al.</u>, No. 19-cv-1608 (JMF)

Dear Judge Furman:

    On behalf of all Defendants, I write in response to Plaintiffs' July 29 letter (ECF # 331) seeking a protective order precluding Defendants from deposing three issuers of VRDOs: Illinois State Tollway Authority, Economic Development Authority of Newport News, Virginia and Kaiser Permanente (collectively, the "Subpoenaed Issuers").[1]  These three depositions will highlight critical differences among putative class members that are highly relevant to the question of whether a class should be certified.  Therefore, the Court should reject Plaintiffs' efforts to block this discovery.[2]

    In the Amended Complaint, Plaintiffs purport to bring this action on behalf of an extraordinarily broad and diverse class:  namely, "[a]ll persons and entities who (whether as issuers or obligors) paid interest expenses on VRDOs that had interest rates reset pursuant to remarketing agreements with Defendants" between February 2008 and June 2016.  (Am. Compl. ¶ 177.)  This proposed class includes thousands of entities that are differently situated from each other and, importantly, from the three named Plaintiffs.  For example, the class purports to include "conduit" issuers, which issued VRDOs on behalf of third parties, but typically disclaimed any liability in connection with those VRDOs.  It would likewise include municipalities that issued a VRDO as one component of a broader transaction that reduced — or entirely negated — the issuer's exposure to the VRDO's variable interest rate.  And the class would cover both entities that paid little attention to Defendants' performance as remarketing agents and entities that monitored the performance of their remarketing agents very closely, potentially mitigating any alleged harm.  Instead of allowing Defendants to explore these, and other, potential differences among putative class members (and with the named Plaintiffs) through the depositions of the three Subpoenaed Issuers — out of the thousands of VRDO obligors and issuers before and during the class period — Plaintiffs seek to foreclose such discovery.[3]

---

[1]  Defendants have withdrawn the subpoenas issued to the Ann Storck Center because that entity no longer has any records related to its VRDO issuance and there is no person at that entity with knowledge of the matters at hand.

[2]  When the parties discussed Defendants' subpoenas to issuers, Defendants explained why they were seeking this limited discovery and that it was permitted under this Court's recent decision in *Fishon* v. *Peloton*.  While Plaintiffs "disagreed," they gave no rationale or support for their position and demanded the withdrawal of the subpoenas in their entirety.  In their July 29 letter, Plaintiffs have objected only to the deposition subpoenas and have not challenged the document subpoenas.

[3]  There can be no suggestion that these three depositions are disproportionate in number given the potential size of the class.  *See Arredondo* v. *Delano Farms Co.*, 2014 WL 5106401, at *9 (E.D. Cal.) (permitting depositions from 200 absent class members, noting that it was still "less than one percent" of the class).

As set forth in *Fishon* v. *Peloton Interactive, Inc.*, 336 F.R.D. 67 (S.D.N.Y. 2020), putative class member discovery is permitted at the class certification stage if the party seeking the discovery shows that the discovery (1) "is not sought for any improper purposes, to harass, or to alter the membership of the class," (2) "is narrowly tailored to subjects which are plainly relevant," and (3) "does not impose an undue burden given the need for the discovery at issue and the availability of the same or similar discovery from a party." *Id.* at 71.[4] This standard balances the competing interests of the nonparty putative class members and Defendants' right to discovery to develop their arguments. Defendants easily meet this standard.

***First***, Defendants do not seek discovery from the three Subpoenaed Issuers for any improper purpose. To the contrary, the Subpoenaed Issuers were carefully selected because each is differently situated from the three named Plaintiffs, and, as a result, will highlight the diverse nature of the putative class members. Additionally, each of the Subpoenaed Issuers is, in fact, a past, current or potential client of Defendants — making it implausible that Defendants are going to "harass" them. Indeed, Defendants have already been working with the Subpoenaed Issuers to minimize any burden, and have withdrawn the subpoena to another issuer upon learning that it would not have any relevant information.[5] This is not the behavior of parties who seek to harass, notwithstanding Plaintiffs' inappropriate speculation to the contrary.

***Second,*** the discovery sought from the Subpoenaed Issuers is undeniably relevant to the issues in the case.[6] Defendants are seeking testimony about the allegations in the Complaint and the debt issuances of each of the Subpoenaed Issuers. More specifically, and as explained to Plaintiffs, the purpose of these subpoenas is to seek information that may be relevant to the class certification analysis. Each of the Subpoenaed Issuers is differently situated from the three named Plaintiffs in a variety of ways, including the nature of the issuer itself, the debt portfolio held by each, the structure and nature of their VRDO issuances and their subsequent treatment of

---

[4] Plaintiffs' argument that discovery of putative class members is only permitted in "extraordinary circumstances" or there is some "general prohibition" on such discovery is not accurate, particularly at the class certification stage. Plaintiffs rely heavily on *Stinson* v. *City of New York*, 2015 WL 8675360 (S.D.N.Y.), which did not even address the issue of putative class member discovery at the class certification stage and has been distinguished on that basis alone. *See Peloton,* 336 F.R.D. at 71. Further, some of the cases on which Plaintiffs rely granted defendants the right to seek absent class member discovery once they were capable of showing why it was necessary. *See, e.g.*, *Teachers' Ret. Sys. of La.* v. *ACLN Ltd.*, 2004 WL 2997957, at *10 (S.D.N.Y.); *Valenzuela* v. *Union Pac. R.R. Co.*, 2016 WL 3029887, at *4 (D. Ariz.). In another, the court in fact granted such discovery. *See Redmond* v. *Moody's Inv. Serv.*, 1995 WL 276150, at *2 (S.D.N.Y.) (permitting interrogatories to absent class members and depositions of absent class member affiants). Plaintiffs' suggestion that discovery is permitted of absent class members only when they "inject" themselves into the litigation is also wrong. *See, e.g., Peterson v. Alaska Commc'ns Sys. Grp. Inc.*, 2020 WL 13228683, at *8 (D. Alaska); *Arredondo*, 2014 WL 5106401, at *9.

[5] The court's concern in *Peloton* about "impermissibly alter[ing] the membership of the class," 336 F.R.D. at 71, is not applicable here. There, the court — which permitted the defendant to take 10 depositions of absent class members — was apparently concerned that the defendant might seek to disqualify individuals from the class for failing to comply with their discovery obligations. Defendants here have no intention of taking any such step and, as noted above, are working with the subpoena recipients to minimize any burden.

[6] Unlike in *In re Bank of New York Mellon Corp. Forex Transactions Litigation*, 2014 WL 5392465, at *3 (S.D.N.Y.), where the defendant "[did] not claim that any of the[] proposed depositions [was] critical" to any of the class actions, the discovery sought here is directly pertinent to class certification issues.

their VRDOs.[7]  As for the scope of the subpoenas, Defendants will continue to work with the Subpoenaed Issuers to narrowly tailor the scope of each examination as appropriate.

*Third*, the information Defendants seek is not in their possession or available from the named Plaintiffs.  Even if a Defendant served as a remarketing agent for one of the Subpoenaed Issuers, the Defendant would not have any specific knowledge of many critical issues, including (a) why the issuer decided to issue VRDOs, as opposed to using other financing alternatives; (b) how the issuer structured its VRDOs and whether its VRDOs were part of a broader transaction that may have eliminated the issuer's exposure to the VRDO's interest rate, thus making it impossible for the issuer to have been injured by the alleged conspiracy; (c) whether the issuer was the obligor on any VRDOs and whether the issuer actually made any interest payments on VRDOs, which is critical to determining whether an issuer is a member of the putative class as defined by Plaintiffs; and (d) any internal monitoring and analyses of the performance of VRDOs that may, among other things, reveal that some issuers were on inquiry notice of the alleged conspiracy before others.

Nor is this information that Defendants could obtain from the named Plaintiffs.  The Subpoenaed Issuers were deliberately selected because Defendants believe there are material differences between them and the named Plaintiffs.  Indeed, Plaintiffs' suggestion that Defendants rely on one of Philadelphia's conduit issuances only underscores the importance of discovery from the Subpoenaed Issuers.  A typical conduit issuer merely provides access to the municipal bond market on behalf of non-municipal entities, and generally disclaims all financial responsibility for the bonds.  In contrast to the typical conduit issuer, Philadelphia, through a web of complex contracts, specifically assumed financial responsibility for the bonds Plaintiffs cite, which were issued on behalf of other municipal entities.  Defendants are entitled to explore the complicated and — per Plaintiffs' example — varied structures of conduit issuances and their impact on class certification.

Defendants easily make the required showing on each *Peloton* prong.  In addition, the *Peloton* factors are not to be applied in a "mechanistic fashion."  336 F.R.D. at 71.  If the purpose is not improper, and the burden is "not particularly great" — "for example, if the third party is well-heeled or already has counsel" — little showing of necessity is required.  *Id.*  That is the case here.  Defendants have not subpoenaed individuals, as was the case in *Peloton*, but corporate entities — a hospital group with over 200,000 employees, a state agency, and a city agency.  These entities are certainly "well-heeled" and "ha[ve] counsel."  Indeed, tellingly, none of these entities has itself moved to quash the subpoenas — despite being able to.  Just like the document subpoenas, which are unchallenged, the deposition subpoenas should be allowed to stand.[8]

---

[7]  Additionally, the deposition topics track the topics set out in the document subpoenas, which Plaintiffs have not challenged.  (*Compare*, *e.g.*, Pls.' Ex. A at 18-21, *with id.* at 130-33.)  Plaintiffs have not challenged the document subpoenas, and taking depositions to ask follow-up questions based on document discovery is perfectly routine.

[8]  Defendants noticed the depositions to take place on or before August 15, the discovery deadline in this case.  Consistent with their desire to minimize the burden on the Subpoenaed Issuers, Defendants wish the depositions to take place at dates of the issuers' convenience.  The Subpoenaed Issuers have indicated that they prefer the depositions to take place after August 15.  However, Plaintiffs have stated that they object to accommodating the Subpoenaed Issuers in this way.  Defendants request that the Court prevent the Plaintiffs from imposing this unnecessary burden on the Subpoenaed Issuers and permit the depositions to take place after August 15.

Hon. Jesse M. Furman
August 3, 2022

Very truly yours,

*/s/ Laura W. Sawyer*

Laura W. Sawyer

cc:   All counsel (by ECF)

Plaintiffs' motion is DENIED substantially for the reasons set forth in Defendants' response.  That denial, however, is without prejudice to any challenge by the Subpoenaed Issuers to the scope of the subpoenas --- although before any such challenge may be brought, the relevant parties must meet and confer in accordance with the Court's Individual Rules and Practices for Civil Cases.  All dates and deadlines remain in effect.  (If Defendants cannot arrange for the depositions to occur before the discovery deadline, they should seek appropriate relief after conferring with the Subpoenaed Issuers and Plaintiffs.  Footnote 8 is not a proper request for an extension.)

The Clerk of Court is directed to terminate ECF No. 331.

SO ORDERED.

August 8, 2022