November 20, 2023

Dear Judge Furman:

Lead Counsel for the certified class writes regarding **_162_** non-party subpoenas Defendants recently served on absent class members across the country. For the reasons set forth below, these subpoenas are improper, and the Court should enter a protective order preventing all of them.

***First***, the subpoenas are untimely and inconsistent with the Court's prior direction that only "top-off discovery" may be taken during the narrow period ending December 20, 2023. Dkt. 279 at 60. Indeed, the subpoenas are more than one year late pursuant to the Court-ordered deadline for completing any non-party depositions of August 15, 2022, Dkt. 307 at 2, and Defendants have failed to seek relief from that deadline, nor could they establish good cause for doing so. Moreover, as noted below, Defendants seek this expansive and belated discovery from absent class members while simultaneously refusing to reasonably supplement their own related productions.

***Second***, the over 100 subpoenas, demanding expansive document productions and immediate depositions of absent class members on irrelevant topics before year-end, fall well short of the high hurdle Defendants must clear to warrant absent class member discovery. Indeed, the subpoenas appear designed to harass and pick off class members, "turning this 'opt-out' class action into an impermissible 'opt-in" class action." *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 70 (S.D.N.Y. 2020).

As a general matter, "[t]he members of a class . . . are not parties. Without special court orders, they are not subject to counterclaims or discovery." *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 94 (S.D.N.Y. 2001). Absent class member discovery is only "permitted in extraordinary circumstances." *Stinson v. City of New York*, 2015 WL 8675360, at *1 (S.D.N.Y. Dec. 11, 2015) (citations omitted). Defendants must make a "strong showing" that "information sought (1) is not sought with the purpose or effect of harassment or altering membership of the class; (2) is directly relevant to the common questions and unavailable from the representative parties; and (3) is necessary at trial at issues common to the class." *Id.* at *3 (collecting cases); *Peloton*, 336 F.R.D. at 71 (absent class members discovery must be "narrowly tailored to subjects which are plainly relevant").

Such discovery is even more disfavored at this stage. After a class has been certified, "[d]iscovery of absent class members regarding individual issues, as opposed to common questions, is inappropriate." *Indergit v. Rite Aid Corp.*, 2015 WL 7736533, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted).[1] Defendants bear the burden of demonstrating why their subpoenas meet these high thresholds. *Levinson v. Westport Nat'l Bank*, 2011 WL 13237887, at *1 (D. Conn. May 10, 2011). "The burden placed on a defendant intending to conduct depositions of absent class members is 'particularly heavy.'" *Stinson*, 2015 WL 8675360, at *1 (citations omitted). Defendants do not come close to carrying this heavy burden here.

***The subpoenas are untimely***. Before class certification, Defendants served 20 subpoenas on class members, contending that established prohibitions against absent class member discovery were not relevant "at the class certification stage" and that the requested discovery addressed individualized issues among class members that were "highly relevant to the question of whether a class should be certified." Dkt. 336 at 1-2 & n.4. The Court permitted that limited discovery on this basis but ordered that "[a]ll dates and deadlines remain in effect." Dkt. 331 at 4. Those

---

[1] *See also In re Petrobras Sec. Litig.,* 2016 WL 10353228, at *2 (S.D.N.Y. Feb. 22, 2016) (same).

deadlines included the already-passed Court-ordered "deadline for noticing any non-party deposition" of June 30, 2022, and the now-passed deadline of August 15, 2022, for completing any remaining non-party depositions. *See* Dkt. 307 at 2.

On September 21, 2023, the Court granted Plaintiffs' motion for class certification and found Defendants' efforts to demonstrate any purported individualized issues predominated were insufficient. *See* Dkt. 456. At 19-30. Pursuant to the operative case schedule, the parties then met and conferred about any remaining "top-off discovery" that would need to be completed within the following 90 days. *See* Dkt. 279 at 9. Throughout these discussions, Defendants repeatedly reiterated their concern that Plaintiffs would use this period for broad new discovery. Plaintiffs assured Defendants that this would not be the case. Rather, Plaintiffs explained they expected to seek further discovery on swaps transactions in which Defendants participated.[2] Defendants did not provide any specifics about "top-off discovery" they anticipated needing. But, as soon as the Court ordered the parties to proceed with the "top-off discovery" as agreed by the parties, Defendants began dumping dozens of absent class member subpoenas on Plaintiffs, and continue to do so.

Defendants have offered no justification for blowing past the Court-ordered deposition deadlines (Dkt. 307 at 2) by nearly a year and a half. If Defendants wanted to fill the remaining month of "top-off discovery" with 78 third-party depositions, they should have raised the issue with Plaintiffs and shown good cause for reopening deposition discovery.

Nor are 78 deposition subpoenas and 84 document subpoenas properly characterized as "top-off discovery," which is merely intended to clean up lingering issues, not broadly revisit fact discovery. In the parties' meet-and-confer, Defendants claimed vaguely that their subpoenas were responsive to the Court's class certification decision, where the Court noted that Defendants had failed to support certain arguments. *See* Dkt. 456 at 27. The Court's decision was not an invitation to broadly reopen discovery. If Defendants thought this massive volume of third-party discovery was relevant to the class certification decision, they should have pursued it before that motion was submitted. *Cf. Stinson*, 2015 WL 8675360, at *2 (reference in class certification order to potential defenses Defendants might have as to certain class members was not an invitation to reopen discovery on individualized issues post-certification).

Defendants' expansive subpoenas stand in stark contrast to their approach to Plaintiffs' top-off discovery requests. At the start of the "top-off" period, Plaintiffs requested targeted swaps discovery. *E.g.*, Ex. 1 at 6 (10/19/2023 S. Becker e-mail). Defendants rejected Plaintiffs' new requests wholesale on the grounds that Defendants have "already completed their production of documents" and that Plaintiffs could not justify new requests "at this late date." Ex. 2 at 1-2 (11/10/2023 M. Christian e-mail); *see also* Ex. 1 at 3 (11/1/2023 L. Sawyer e-mail) (asserting that Wells Fargo's data production was "already complete" and that Plaintiffs' new requests were "untimely").

**<u>The subpoenas seek irrelevant information.</u>** As the Court may recall, Defendants last year served document and deposition subpoenas on topics such as "the terms of all Swaps you entered

---

[2] The Court declined to reach the issue of whether class member damages should be offset by certain interest rate swaps they entered. Dkt. 456 at 27 n.7. Accordingly, Plaintiffs previewed that they expected to seek limited additional discovery from Defendants to aid a potential damages model.

into" that "relate to any of Your Municipal Bonds"; "the markets in which VRDOs were traded"; and investigations into "whether VRDO interest rates were inflated." *See* Dkts. 331-1-4 (examples of Defendants' pre-certification subpoenas). While Plaintiffs have always maintained that these subpoenas sought irrelevant information, Defendants previously justified these subpoenas because they claimed they would reveal "information" on individualized issues that "may be relevant to the class certification analysis." Dkt. 336 at 2.

But now, post-certification, Defendants seek documents and deposition testimony on the ***identical issues*** on nearly ten times the number of class members. For example, Defendants' latest subpoenas seek deposition testimony on "[a]ny Swaps that You entered into in connection with any Synthetic Fixed Rate Transaction"; "[t]he markets in which Your VRDOs were issued, priced, and traded"; and "[a]ny inquiry, analysis, or investigation by You or Your agents of whether VRDO interest rates were inflated." *E.g.*, Exs. 3-6. This testimony, which Defendants previously claimed was relevant to show how certain class members are "differently situated from the three named Plaintiffs," Dkt. 336 at 2, is plainly irrelevant now that class certification has been granted.

Case law makes clear that "[a]ny inquiry into the individual circumstances of absent class members would be improper at this stage of the litigation.'" *Stinson*, 2015 WL 8675360, at *2; *see also Petrobras*, 2016 WL 10353228, at *2. *Peloton*, the case on which Defendants relied on most heavily in the parties' prior dispute (Dkt. 336 at 2-4), confirms the impropriety of Defendants' post-certification subpoenas. In *Peloton*, the court permitted depositions of certain class members on individualized issues *before* class certification to "provide relevant factual support for its contention under Rule 23(b)(3) that individual issues as to causation and injury will overwhelm common issues." 336 F.R.D. at 71. In permitting such discovery, the court expressly distinguished the prevailing Second Circuit case law as dealing with post-certification, merits-related subpoenas as opposed to the *Peloton* subpoenas issued "for the purpose of showing that putative class members should not be made class members at all." *Id*. Even then, the court found 21 absent class member depositions (out of a class of 2,700) to be too many. *Id.* at 72.

Here, by contrast, Defendants' efforts border on harassment. Courts routinely stop absent class member discovery that is designed "for any improper purposes, to harass, or to alter the membership of the class." *Peloton*, 336 F.R.D. at 71. This Court should do the same. Defendants have now served subpoenas on a total of 95 class members—class members that, during meet and confers, Defendants admitted were selected because of the large size of their estimated damages. That, coupled with Defendants' inability to provide any relevance rationale, strongly suggests that Defendants' effort to cram ***nearly 100*** depositions into the final month of "top-off discovery" is simply an attempt to incite class members to opt out and exhaust lead counsel with irrelevant and burdensome depositions occurring multiple times a day all over the country. *See Stephenson v. Family Sols. of Ohio, Inc.*, 2022 WL 597261, at *7 (N.D. Ohio Feb. 28, 2022) (defendants failed to show that 20 depositions would not "have the effect of harassing the absent class members").[3]

---

[3] Defendants' post-certification attempts to contact (and influence) class members are also improper because "class certification gives rise to an attorney-client relationship between potential class members and class counsel." *Gortat v. Capala Bros.*, 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010) (citation omitted); Manual for Complex Litigation, Fourth, § 21.33 ("Defendants' attorneys … may only communicate through class counsel with class members on matters regarding the litigation.").

Respectfully submitted,

| | | |
|---|---|---|
| */s/ Daniel L. Brockett* | */s/ David H. Wollmuth* | */s/ William C. Carmody* |
| Daniel L. Brockett | David H. Wollmuth | William Christopher Carmody |
| **Quinn Emanuel Urquhart & Sullivan, LLP** | **Wollmuth Maher & Deutsch LLP**. | **Susman Godfrey LLP** |

cc:   All counsel of record (via ECF)